UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT PIKEVILLE

ROBERT TASHBOOK,                      )
                                      )
      Plaintiff,             )        Civil Action No. 7: 06-109-DCR
                                      )
V.                                    )
                                      )
UNITED STATES PRISON at BIG           )        **MEMORANDUM OPINION**
SANDY,                                )        **AND ORDER**
                                      )
      Defendant.             )
                                      )

             ***   ***   ***   ***

      Robert Tashbook, who is presently confined in the United States Penitentiary at Big

Sandy ("USP-Big Sandy") in Inez, Kentucky, initiated this action by filing a one-page,

handwritten *pro se* submission. In it, the Plaintiff alleged in general terms that if and when he

is transferred to another prison facility, he likely would be killed. He alleged that he did not

have time to proceed with the Bureau of Prison's ("BOP") administrative exhaustion process

which he estimated would take six (6) months to complete.

      On June 8, 2006, the Court entered a "Deficiency Order" [Record No. 3], in which it

construed the Plaintiff's submission as a civil rights complaint under 28 U.S.C. §1331, pursuant

to the doctrine announced in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

The Court noted that the Plaintiff offered no details in support of his claim that he would be

killed if transferred to another federal prison. The Court further noted that because the Plaintiff

had filed nothing to indicate that he had sought emergency relief from the BOP under the

-1-

provisions of 28 C. F.R. §542.18, there was nothing in the record to excuse him from completing the BOP's administrative exhaustion process.  In the Deficiency Order, the Court also instructed the *pro se* Plaintiff to either pay the $350.00 filing fee or to file a motion to proceed *in forma pauperis* under 28 U.S.C. §1915(a).  The Plaintiff has now filed some *in forma pauperis* forms. [Record No. 7]

<u>Plaintiff's Subsequent Filings</u>

The Plaintiff has also filed a series of handwritten submissions:  (1) a five-page handwritten pleading filed on June 16, 2006 [Record No. 6]; a three-page handwritten pleading filed under seal on June 26, 2006 [Record No. 10]; and a ten-page handwritten pleading filed under seal on July 10, 2006 [Record No. 12].  It appears that the Plaintiff names the USP-Big Sandy as the Defendant.  In all of his submissions, the Plaintiff seeks a transfer to a lower security prison and challenges the conditions of his confinement at USP-Big Sandy.  These claims would fall under the Eighth Amendment of the United States Constitution.

In his June 16, 2006 filing, the Plaintiff  states that the BOP is processing his transfer to another high-security federal prison and that he will be transferred in a matter of days.  [*Id.*, p. 2] He reiterates his plea for the Court to intervene and prevent and prevent the BOP from transferring him until the BOP can "represent that Plaintiff would be free from harm (and threats of harm) while in general population at the prison to which he is being transferred."  [*Id.*, p. 1][1]

The Plaintiff also explains that he was previously confined in USP-Beaumont, Texas, and that he was transferred out of that facility on October 25, 2005, and arrived at USP-Big Sandy

---

[1]     The plaintiff fails in his current submission to explain *why* he thinks his life has been in danger and will continue to be in danger if transferred to another federal facility.

on November 30, 2005.  He states that as soon as he arrived at USP-Big Sandy, he became concerned about his safety if released into the general population there because of threats made to him.  He states that, on December 3, 2005 (and again on April 3, 2006), he was removed from the general population and placed in protective investigative custody.  He complains that as a result of that custody classification, he has been forced to live in the "hole" (segregated housing unit/"SHU") the entire time he has been confined in USP-Big Sandy.

In his June 16, 2006 submission, the Plaintiff speculates that, if he is transferred, he will either be in similar danger or he will be placed in SHU.  He asks the Court to intervene either for the purposes of preventing a transfer or, if he is transferred, preventing the BOP from placing him in SHU.

The Plaintiff alleges in great detail in his June 26, 2006 submission [Record No. 10, filed under seal] that he pursued a series of BP-8's ("Request for Informal Resolutions") and a subsequent BP-9 request to C. Norment, the Administrative Remedy Coordinator at USP-Big Sandy.  He alleges that all of these requests were either lost or ignored; that prison officials unduly delayed in processing the request; and that all of his requests were denied. The Plaintiff admitted in that same pleading, however, that he unilaterally determined that it would be futile to pursue his request for a transfer to the next highest level, the BOP's Mid-Atlantic Regional Office, and instead opted to file a Complaint in this Court.  [*Id.*, p. 2]

Although lengthy, the Plaintiff's July 10, 2006 submission [Record No. 12, filed under seal] is essentially a more detailed statement of his June 16, 2006 filing.  In his July 10, 2006 submission, the Plaintiff asserts a long list of complaints.  In summary, he:  (1) seeks a transfer to a lower security prison facility; (2) alleges that he never requested to be held in "protective

custody" at any facility; (3) complains about his prolonged confinement in SHU; (4) alleges that

his life is in danger in both the general population and in the SHU of USP-Big Sandy; and (5)

complains that his confinement in SHU creates a "constitutional violation" due to the imposition

of "lockdown" status and the reduced supply of food and writing pens.  [*See* Record No. 12, ¶

4]  The Plaintiff then states that during his confinement at numerous BOP facilities, he has been

threatened by other inmates.  [*Id*., ¶ 6]  He offers to leave the United States and relinquish his

citizenship if the BOP will release him from custody.  [*Id*., ¶ 13]

DISCUSSION

1.  <u>Failure to Exhaust Claims</u>

To the extent that he asks for an emergency Order preventing the BOP from transferring

him to any other high-level federal institution, the Plaintiff simply has not established grounds

justifying emergency relief.  First, the Court again notes that in none of the Plaintiff's filings has

he indicated that he even attempted to invoke the emergency relief  measure provided in 28

C.F.R. §542.18, which states as follows:

> If the Request [for Administrative Remedy, (BP-9)] is determined to be of an
> emergency nature which threatens the inmate's immediate health or welfare, the
> Warden shall respond not later than the third calendar day after filing.

28 C.F. R §542.18

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires state and

federal prisoners bringing actions concerning prison conditions, and any other incident to prison

life, such as excessive force, to exhaust all available administrative remedies before suing in

federal court.  *See Porter v. Nussle*, 534 U.S. 122 S. Ct. 983 (2002); *Lavista v. Beeler*, 195 F.3d

254, 256 (6th Cir. 1999); *Ricks v. Peterson*, 26 Fed. Appx. 588, 2001 WL 1345089 (8th Cir.

(Minn.) November 2, 2001) (Not selected for publication in Federal Reporter) (inmate was required to exhaust administrative remedies before bringing suit under *Bivens* based on inadequate conditions of confinement, citing *Booth v. Churner*, instant Plaintiff's Eighth Amendment *Bivens* claims.

Since April 26, 1996, the effective date of the PLRA, 42 U.S.C. §1997e(a), has read as follows:

> No action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The Sixth Circuit has held that the above-quoted language means what it says, expressly requiring exhaustion of administrative remedies before the bringing of new actions. *Wright v. Morris*, 111 F.3d 414 (6th Cir.), *cert. denied*, 118 S. Ct. 263 (1997). The circuit court has held that it is contrary to Congress's intent, in enacting the PLRA, to allow inmates to bypass the exhaustion requirement by waiting until their administrative remedies are time-barred. *Wright v. Morris*, 111 F.3d at 417 n.3. Unless the record demonstrates that the requirements of §1997e(a) have been met, the District Court is to dismiss the action without prejudice. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.), *cert. denied*, 119 S. Ct. 88 (1998). Thus, the burden is on the Plaintiff to demonstrate exhaustion of his administrative remedies *prior* to filing the lawsuit. *Id.*

Under federal law, it is insufficient for a prisoner to merely claim that grievances were not answered satisfactorily or to begin the grievance process and not finish it. For any issue a plaintiff intends to raise, he must demonstrate exhaustion, or his attempts at exhaustion, before he can be considered to have substantially complied with the law. *See Wyatt v. Leonard*, 193

F.3d 876 (6th Cir. 1999).  *See also* a series of unpublished opinions about the impermissibility of prisoners short-circuiting the system, alleging the futility of going further, and asking the court to rule they had done enough:  *McRae v. Corrections Corp. of America*, 208 F.3d 214, 2000 WL 302772 (6th Cir. March 27, 2000); *Fisher v. Wickstrom*, 230 F.3d 1358, 2000 WL 1477232 (6th Cir. Sept. 25, 2000); and *Mentecki v. Corrections Corp. of America*, 2000 WL 1648127 (6th Cir. Oct. 27, 2000).

Mere allegations of compliance with grievance procedures, unsupported by documentary proof, are inadequate to demonstrate efforts or attempts to comply with the administrative remedy process.  In *Wyatt v. Leonard*, the court concluded that the plaintiff in that case had made an adequate showing that he had attempted to comply with administrative remedies, because the plaintiff had attached numerous letters he had filed and other persuasive documents.

Here, the Plaintiff has attached no documentation to his Complaint which would substantiate his claim that he pursued all of the steps which he describes in his various filings. Even if the Plaintiff had provided the Court with paperwork verifying the limited administrative remedy steps he claims that he undertook, it is obvious that the Plaintiff simply opted to "short circuit" the BOP's grievance system.  The Plaintiff's filings reflect that when he decided that he was not receiving the various forms of relief he was seeking (transfer to a lower security prison, release from SHU at USP-Big Sandy), he simply short-circuited the administrative remedy process and filed suit in this Court.  Neither the PLRA nor case law allow him to do this.

Even more suspect is the Plaintiff's claim that USP-Big Sandy prison staff *prevented* him from filing a BP-9 when they failed to provide him with a written denial of his BP-8 Requests. He argues that a written denial of a BP-8 Request is a prerequisite to filing a BP-9 "Request for Administrative Remedy."

The Plaintiff is incorrect in his assertion that the absence of a written denial of the BP-8 Requests prevented him from pursuing further grievance efforts.  There is no language in §542.18 which requires an inmate to produce written denial of a BP-8 request prior to filing a BP-9.  The regulation provides as follows:

> **(a) Submission. The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred.**

> (b) Extension.  Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed.  In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following:  an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under §542.19 of this part was delayed.

§542.14 {Emphasis Added}

In the absence of a written denial of the two BP-8 Requests (which the Plaintiff did not produce for the Court's review), the Plaintiff would have been authorized to pursue a BP-9 Request for Administrative Remedy with the warden.  Moreover, §542.18 clearly informs that "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."  §542.18.  Thus, contrary to the Plaintiff's contention, he was not prevented by his Case Manager – or any other prison staff – from pursuing any BOP administrative remedy, including but not limited to the emergency measure contained in §542.18.

At one point in his June 26, 2006 submission, the Plaintiff stated that he thought it was futile to pursue a request for emergency relief any further after USP-Big Sandy Administrative Remedy Coordinator Norment informed him on June 2, 2006, that the BOP had denied a request to transfer him to USP-Terre Haute, which has a religious-based "Life Connections Program." [Record No. 10, p. 2]  He later stated on page 3 of that submission that he did not pursue any further administrative measures – either emergency or non-emergency – on the advice of Chief Psychologist T. King.  Plaintiff states that according to King, if he (Plaintiff) complained too much he would be classified as "unplacable," [sic] *i.e.*, being unable to be placed in any general population, and further advised the Plaintiff that he would be transferred to a Supermax ADX prison where prisoners such as Zaccarias Moussaui, the Uni-Bomber, and other notorious prisoners are confined.  The Plaintiff attached no reports from Mr. King which would substantiate his claim that his life is in danger; he instead only summarized what T. King said to him.

Because the Plaintiff asks for emergency above and beyond the stated guidelines for relief, the Court does not find that it would have been asking too much for the Plaintiff to have produced a statement from T. King.  Plaintiff's failure to follow all available remedies for emergency relief causes to the Court to give little credence to his claim that his life is in imminent danger.  Additionally, given the fact that the Plaintiff arrived at USP-Big Sandy over seven months ago, he would have had sufficient time in which to complete the entire BOP administrative exhaustion process.

## 2. Emergency Relief Not Warranted

In his various filings, the Plaintiff has alleged the existence of an emergency situation and the Court has examined his underlying claims.  They do not meet the stringent criteria necessary for the imposition of either emergency or injunctive relief.

There are four factors which a court considers in deciding if a  preliminary injunction is warranted:  (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Golden v. Kelsey-Hayes Company*, 73 F.3d 648, 653 (6th Cir. 1996) (citing *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1381 (6th Cir. 1995) (citing *International Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir.), *cert. denied*, 502 U.S. 813 (1991) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985)).

With regard to the first factor, the Plaintiff's likelihood of success on the merits is almost non-existent.  Well-settled law establishes that with regard to prison transfers and classification status, prisoners have no constitutional entitlement to invoke due process claims.  *Moody v. Daggett*, 429 U.S. 78, 88, n.9 (1976); *Marchesani v. McCune*, 531 F.2d 459 (10th Cir.), *cert. denied*, 429 U.S. 846 (1976) (inmates have neither protected liberty interests nor property interests in custodial classification).  Rather, the Attorney General of the United States has delegated those discretionary decisions to the Director of the BOP, which has a classification procedure.  18 U.S.C. §4081; 28 C. F .R. §0.96;  *Peck v. Hoff*, 660 F.2d 371 (8th Cir. 1981).

Congress has given federal prison officials full discretion to control the conditions of confinement, vesting the BOP "with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of lawfully convicted prisoner," 18 U.S.C. §3621; *Moody v. Daggett*, 429 U.S. 78, 88 (1976); and *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986).  A prisoner has no entitlement protected by due process to a particular security classification or to be incarcerated in a particular facility.  *See Moody v. Daggett*, 429 U.S. at 88 n. 9; *Meachum v. Fano*, 427 U.S. 215, 224, 96 S. Ct. 2532 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S. Ct. 2543 (1976).

The Constitution does not confer inmates a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed . . . and is not otherwise violative of the Constitution." *Hewitt v. Helms*, 459 U.S. 460 at 468, (1983). The Due Process Clause requires only that inmates' conditions of confinement be consistent with their sentence. *Id*. at 468. In short, prisoner classification in federal prisons is not directly subject to due process protections. *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th Cir.1995).

As to the second factor, the Plaintiff offers no evidence that being confined in SHU at USP-Big Sandy subjects him to hardship or irreparable harm, or that his confinement in SHU violates the Eighth Amendment. An Eighth Amendment claim relating to the conditions of a prisoner's confinement arise only if the defendant's actions imposed "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed.2d 418 (1995).

The Sixth Circuit has repeatedly held that placement in administrative segregation does not constitute an atypical and significant hardship on the inmate. *See Jones v. Baker*, 155 F.3d 810, 811 (6th Cir.1998); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.1997); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir.1995); *See  McGaughy v. Johnson*, 63 Fed. Appx. 177, 178 (6th Cir. (Mich.) March 19. 2003) (not selected for publication in the Federal Reporter) (McGaughy was simply placed in administrative segregation, the punishment did not impose an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life; contrary to McGaughy's assertion, he had no constitutional right to be returned to the general population").

The Plaintiff's statements in his June 16, 2006 filing actually refute his argument that his prolonged confinement in SHU imposed "atypical and significant hardship" on him. In that submission, he stated that from the very moment he arrived at USP-Big Sandy, he was in fear

-10-

of his life as long as he was among the general population, and that he conveyed that fear to the officials at USP-Big Sandy upon his arrival.  In response, the very next day, USP-Big Sandy officials placed him in SHU away from the general population (for his own protection) and continued that placement decision on April 3, 2006.  Yet now, the Plaintiff argues that his several-month tenure in SHU has been too restrictive and has infringed too harshly upon his freedom within the confines of the prison.  The Plaintiff's arguments are completely inconsistent.  First, he claims that his life and physical safety were compromised by being in the general population at USP-Big Sandy.  Second, he claims confinement in SHU has worked too much of a hardship on him.  The Plaintiff is not entitled to be released from custody because his presence might endanger his safety.

As to the third and fourth factors, the courts are ever cautioned to stay out of the business of micro-managing prisons.  *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); and *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987).  Under the circumstances of this case, to find a liberty interest in the classification and custody level challenged herein would  be to involve the judiciary in "the day-to-day functioning of . . . prisons . . . [and] . . . issues and discretionary decisions that are not the business of federal judges."  *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976).  The Court is not convinced that the public interest would not be served by interfering with the BOP's classification process or its decisions as to the best prison facility in which to house the Plaintiff, who by his own account cannot safely exist in the general population of any federal prison.[2]

The Supreme Court has explicitly rejected heightened judicial scrutiny of prison security policies.  Rigorous scrutiny, the Court noted, is simply "not appropriate for consideration of

---

[2]      The tone, tenor and content of the Plaintiff's filings indicate that he will not be satisfied with his placement in any federal prison.

regulations that are centrally concerned with the maintenance of order and security within prisons." *Thornburgh v. Abbott*, 490 U.S. 401, 409-10, 109 S. Ct. 1874 (1989). "Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Turner v. Safley*, 482 U.S. at 89.

Prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. at 562. For this reason, the Court will not interfere with the BOP's classification decisions affecting the Plaintiff.

### 3. Motion to Reclassify Action as §2241 Habeas Action

The Plaintiff asks the Court to reconsider its decision classifying this action as a *Bivens* civil rights action, and to reclassify it as a habeas action falling under 28 U.S.C. §2241. [*See* Motion, Record No. 11] Such a decision will relieve him of the imposition of a $350.00 filing fee, as opposed to a $5.00 habeas fee under §2241.

The remedy which §2241 affords is restricted to the challenge of the execution of a sentence, such as a claim relating to the computation of parole or sentencing credits. A habeas challenge under §2241 is filed in the district court having jurisdiction over his custodian. *United States v. Jalili*, 925 F.2d 889, 893-94 (6th Cir.1991); *Cohen v. United States*, 593 F.2d 766, 770-71 (6th Cir.1979); *Wright v. United States Bd. of Parole*, 557 F.2d 74, 76-77 (6th Cir.1977)

Here, the Plaintiff does not challenge the execution of his sentence. He challenges the conditions of his confinement. He seeks emergency injunctive relief and complains at length about the various conditions of his confinement at USP-Big Sandy, specifically the fact that he is being housed in SHU. The Plaintiff has clearly filed an Eighth Amendment *Bivens* civil rights action, not a legitimate habeas action under §2241. The Court finds no reason to reclassify this action and that motion will be denied.

<u>CONCLUSION</u>

Based on the foregoing analysis, it is hereby **ORDERED** as follows:

(1)      The Plaintiff's letter seeking clarification, construed as a  "Motion for Order" [Record No. 5], is **DENIED**;

(2)      Plaintiff's "Motion to Recharacterize Action as a §2241" [Record No. 11] is **DENIED**; and

(3)      This action is **DISMISSED** with prejudice, from the Court's docket.  Judgment shall be entered contemporaneously with this Memorandum  Opinion and Order in favor of the Defendant.

This 13th day of July, 2006.

Signed By:

*Danny C. Reeves*   DCR

United States District Judge